UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Shane Simmons, Chris Cook, Larry Basil,
Jerry Candelaria, Brian Clark, Tim Coggins,
Yvonne Marrone, Thomas Martinez, Steve
McKay, Jack Smith, John Smith, and Paul
Smith, on behalf of themselves and all others
similarly situated,

                              Plaintiffs,

                                                            Civ. No. 10-3026 (RHK/SER)
                                                             **ORDER**

v.

Valspar Corporation,

                              Defendant.

---

Christopher B. Hall, Bruce S. H. Sarkisian, Cook, Hall & Lampros, LLP, Atlanta, Georgia, William Kvas, Hunegs LeNeave & Kvas, PA, Minneapolis, Minnesota, for Plaintiffs.

Joan B. Tucker Fife, Winston & Strawn LLP, San Francisco, California, Robert R. Reinhart, Dorsey & Whitney LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

      Plaintiffs are current and former employees of Defendant Valspar Corporation ("Valspar"). They allege, on behalf of themselves and others similarly situated, that Valspar violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") by misclassifying them as exempt and thus failing to pay them overtime. They bring this Motion to (1) conditionally certify the case as a collective action and (2) authorize notice to potential class members. For the reasons below, the Court will grant the Motion.

## BACKGROUND

Plaintiffs are all current or former Territory Manager ("TM"s) for Valspar. Valspar is a manufacturer of paints, stains, and similar products, which are sold at Lowe's Home Center stores throughout the United States. TMs facilitate sales of Valspar products at Lowe's stores. Each TM is assigned a territory of approximately three to ten stores, and each store is covered by only one TM. TMs' job duties fall into three general categories: (1) inventory management, (2) event and brand marketing, and (3) product training.[1] The job requires regular travel between a TM's stores, as well as meetings with customers and contractors outside the stores.

According to Plaintiffs, each TM reports to a Regional Manager who in turn reports to a Division Manager, and all Division Managers report to Valspar's Vice President and National Marketing Manager, Randy Schuetz. (Pl. Affs. ¶¶ 19–20.)[2] Scheutz thus has authority over all TMs throughout the country. (Id. ¶ 22.) Scheutz communicates information to TMs through the Division and Regional Managers or directly via e-mail or conference calls. (Id.) Plaintiffs allege that Scheutz communicated to them the requirement that they work a total of more than eight hours per day in the Lowe's stores within their territories. (Id. ¶ 23.)

---

[1] Within these broad categories, the parties describe TMs' job duties somewhat differently. Valspar emphasizes the amount of discretion and autonomy TMs enjoy (see Mem. in Opp'n at 4–5), while Plaintiffs list 16 identical tasks included in their day-to-day responsibilities (see Mem. in Supp. at 3–4) and emphasize the similarities.

[2] Each Affidavit submitted with Plaintiffs' Memorandum in Support of their Motion contains the same substantive allegations found in identically numbered paragraphs, with very few exceptions. (See Mem. in Supp. Exs. C–M.) The Court thus references these Affidavits by citing them collectively as "Pl. Affs."

Plaintiffs also allege that Regional Managers communicate with the TMs in their regions through weekly conference calls, group-wide e-mails, and quarterly regional meetings.  (Hall Decl. Exs. A-1 to A-5, ¶¶ 4–5.)  Through the weekly conference calls, all TMs within a given region receive identical training directives, marketing materials, "planograms" to implement in their stores, and other job-related instructions.  (Id. Exs. A-1, A-3 to A-5, ¶¶ 7–8; id. Ex. A-2, ¶¶ 8–9.)  When Plaintiffs' managers communicate with them about their job duties and applicable procedures, they draw no distinctions among the duties of any individual TMs.  (Id. Exs. A-1, A-3 to A-5, ¶ 6; id. Ex. A-2, ¶ 7.)  Additionally, the same Code of Ethics and Business Conduct applies to all TMs, and all are required to follow the same Employee Handbook and its policies.  (Id. Ex. A-4, ¶ 14.)

With respect to specific policies and practices, Plaintiffs allege that their managers have instructed them to use Lowe's time-clock systems to clock in when they arrive at a store and clock out when they leave, even if they are leaving to call on a contractor or handle a customer complaint.  (Pl. Affs. ¶ 25.)  Time TMs spend visiting contractors or addressing complaints outside the Lowe's stores is thus not accounted for in the time systems.  (Id. ¶ 29.)  Time spent commuting to, from, and between stores in a TM's territory (which can total as much as four hours per day, depending on the size of the territory), is similarly not accounted for.  (Id. ¶ 27.)  Additionally, TMs' duties include some "ministerial and reporting functions" that must be completed from home and require ten to fifteen hours per week.  (Id. at 30.)  Thus, by requiring TMs to spend at least eight hours per day in the Lowe's stores, Valspar actually requires up to twelve-hour workdays.  (Id. ¶ 32.)

When Plaintiffs questioned this time policy and complained about not being paid for overtime hours worked, their Managers explained that Valspar classifies TMs as exempt under the FLSA, meaning they are ineligible for overtime. (Id. ¶ 34.) However, Plaintiffs allege that TMs do not have managerial responsibilities, do not supervise any other employees, and lack authority to hire, fire, set salaries, or recommend any of these actions. (Id. ¶ 17.) Similarly, they claim TMs lack autonomy to set pricing or to make any meaningful decisions about product placement within the stores in their territories. (E.g., Hall Decl. Ex. A-6 (Cook Dep.) at 179–81; id. Exs. A-1, A-3 to A-5, ¶¶ 11–12; id. Ex. A-2, ¶¶ 12–13.) Hence, Plaintiffs believe they should not be exempt employees.

This action was commenced by former TM Shane Simmons and current TM Chris Cook in July 2010, alleging that Valspar misclassified them as exempt and thus failed to pay them overtime. The Complaint was later amended to include ten additional TMs as named plaintiffs. (See Am. Compl. (Doc. No. 15).) Six others have also opted into the lawsuit to date. (See Doc. Nos. 16, 18, 21, 24, 30, 42.) According to Plaintiffs, more than 275 Valspar TMs may fall within the class of people they seek to represent. (See Pl. Affs. ¶ 38.) Plaintiffs now seek conditional certification and authorization of notice.

## STANDARD OF REVIEW

Employees may collectively sue an employer under the FLSA to recover unpaid overtime. Section 216(b) of the FLSA governs certification of collective actions. 29 U.S.C. § 216(b). It provides that an action for unpaid overtime wages may be brought "by any one or more employees" on behalf of himself or themselves and "other employees similarly situated." Id. Unlike a Rule-23 class action, no employee is a party

4

to an FLSA collective action unless "he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.) (quoting 29 U.S.C. § 216(b)).  This is known as the "opt-in" process.  See West v. Border Foods, Inc., No. 05-2525, 2006 WL 1892527, at *2 (D. Minn. July 10, 2006) (Frank, J.).

The fundamental inquiry in determining whether a collective action is appropriate under § 216(b) is whether plaintiffs are similarly situated.  Heartland Auto., 404 F. Supp. 2d at 1149.  However, the term "similarly situated" is not defined in the FLSA, "and there is little circuit law on the subject."  West, 2006 WL 1892527, at *2; accord Heartland Auto., 404 F. Supp. 2d at 1149.  The Court must determine on a "case by case basis" whether plaintiffs are similarly situated such that collective-action treatment is proper.  Ray v. Motel 4 Operating, Ltd. P'ship, No. 3-95-828, 1996 WL 938231, at *3 (D. Minn. Mar. 18, 1996) (Kyle, J.).

Courts have developed a two-stage process to answer this question.  E.g., Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (Davis, J.); Kalish v. High Tech Inst., Inc., No 04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005) (Tunheim, J.).  At the first, or "notice," stage the plaintiffs seek conditional certification for the purposes of notifying other putative class members and conducting discovery.  Conditional certification is proper if the plaintiffs and others they purport to represent are similarly situated as required by § 216(b).  The plaintiffs bear the burden of showing that they are similarly situated.  Heartland Auto., 404 F. Supp. 2d at 1149. However, "[a]t this stage, plaintiffs need only establish a colorable basis for their claim

that the putative class members were the victims of a single decision, policy, or plan." Burch, 500 F. Supp. 2d at 1186 (citations omitted). Granting conditional certification and authorizing notice allows plaintiffs to proceed as a class through discovery. Id. The second stage occurs after discovery, usually when the defendant moves to decertify the class. E.g., Ray, 1996 WL 938231, at *2. At that stage, the Court applies a stricter standard and makes a factual determination whether the plaintiffs are indeed similarly situated based on more complete evidence. Id.

## ANALYSIS

**I. Conditional Certification**

Plaintiffs seek conditional certification of this case as a collective action as well as authorization to send notice to potential class members who may wish to opt-in. The Court is therefore at the first stage of the process outlined above and must determine whether Plaintiffs present a colorable basis for their claim that a class of similarly situated plaintiffs exists. The burden at the first stage "is not onerous."[3] Dominquez v. Minn. Beef Indus., Inc., No. 06-1002, 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007) (Kyle, J.). Showing a colorable basis simply means that "plaintiff[s] must come forward with something more than the mere averments in [their] complaint in support of [their] claim." Kalish, 2005 WL 1073645, at *2. Here, Plaintiffs do not rely on "mere

---

[3] Valspar points out that eight of the twelve Plaintiffs have already been deposed and there has been "significant factual development." (Mem. in Opp'n at 31.) However, even in cases where the parties have engaged in some discovery, plaintiffs must show only a "colorable basis" to achieve conditional certification at the first stage of review. See West, 2006 WL 1892527, at *3 ("[T]he discovery process has not been completed and, as such, we analyze the Plaintiff's Motion under the initial stage of review. At this stage, Plaintiffs need only show that there is a 'colorable basis' for their collective action."). Valspar acknowledged at oral argument that a lenient standard was appropriate at this stage.

averments" from the Complaint, but rather submit numerous affidavits and declarations in support of their assertions, as well as documents and deposition transcripts.[4]

As an initial matter, Valspar raises numerous objections to Plaintiffs' affidavits. (See Doc. No. 54.)[5] Yet it is unclear whether, or to what extent, evidentiary objections at this stage are proper. See, e.g., Burch, 500 F. Supp. 2d at 1186 (citing Dege v. Hutchinson Tech., Inc., Civ. No. 06-3754, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007) (Frank, J.)) (the Court "does not make any credibility determinations or findings of fact" at the conditional certification stage). Some courts consider evidence that would be inadmissible in deciding motions for conditional certification. E.g., West, 2006 WL 1892527, at *6 (noting split of authority on whether inadmissible hearsay may be considered when deciding a conditional-certification motion); White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 369 (E.D. Tenn. 2006) (finding affidavits supporting conditional certification need not meet all evidentiary standards for admissibility at trial). The only clear requirement is that "averments in support of a Motion for Conditional

---

[4] Of the twelve named Plaintiffs, eleven originally submitted affidavits in support of the instant Motion. (See Mem. in Supp. Exs. C–M.) Later, Plaintiffs submitted additional declarations (some by opt-in plaintiffs), deposition excerpts from six individuals, and copies of five Plaintiffs' performance evaluations. (See Hall Decl. Exs. A-1 to A-16.)

[5] Valspar submitted these Objections in a separate (and lengthy) filing, thereby avoiding the 12,000-word limit for dispositive-motion briefs. See D. Minn. LR 7.1(d). In the Court's view, this was not the appropriate way to raise such Objections, particularly where the issues are not overly complex. See Brennan v. Qwest Commc'ns Int'l, Inc., 727 F. Supp. 2d 751, 753 n.1 (D. Minn. 2010) (Montgomery, J.) (noting disapproval of defendant's filing two simultaneous summary-judgment motions collectively exceeding 12,000 words without seeking permission, even where "[t]he complexity of the issues [would] warrant the increase in the word limit"). To be fair, however, Plaintiffs responded in kind by submitting a response to the Objections separate from their Reply Brief. Additionally, when the Court raised the issue at the hearing on this Motion, Valspar's counsel offered to withdraw the Objections entirely—which the Court deemed unnecessary in light of its analysis herein.

Certification must be based on personal knowledge." West, 2006 WL 1892527, at *6; accord White, 236 F.R.D. at 369. Valspar's objections to lack of personal knowledge are without merit. "It is reasonable to infer from the evidence submitted that [Plaintiffs], as employees of [Valspar], would have learned during the normal course of their employment how the company operates and what the company's policies were." White, 236 F.R.D. at 369 (declining to strike objected-to portions of declarations where the court could infer they were based on personal knowledge).

Turning to the substance of Plaintiffs' arguments, their affidavits and declarations all tell the same story. Plaintiffs assert that they, along with the opt-ins and other putative class members, are similarly situated because all were or are TMs for Valspar (Pl. Affs. ¶ 6), all had the same job duties and responsibilities (id. ¶¶ 5, 10), all were classified as non-exempt under the FLSA[6] (id. ¶ 34), and all were instructed to only log time actually spent in Lowe's stores despite working many hours outside the stores each week (id. ¶¶ 23–24, 27–32). They claim Valspar's time-reporting policy was communicated to them by Schuetz, who had authority over all TMs, as well as through their Regional and Division Managers. (Id. ¶¶ 23–24.) Although Plaintiffs worked in many regions, all were instructed to log their time in this manner. (Id. ¶¶ 19–21.) With respect to their exemption status, Plaintiffs aver that they had no managerial duties (id. ¶ 17), did not perform any functions requiring specialized or technical skills (id. ¶ 13), and did not make final decisions about pricing or marketing Valspar products (id. ¶ 14). The

---

[6] As Plaintiffs highlighted at oral argument on this Motion, Valspar has acknowledged that the central issue is whether TMs' exempt classification is proper; it does not presently dispute that it has an across-the-board policy of classifying them as exempt.

declarations filed by each opt-in plaintiff to date contain substantially the same allegations. (See Doc. Nos. 16, 18, 21, 24, 30, 42.) In short, Plaintiffs have all asserted that they, along with other Valspar TMs, were misclassified as exempt and were victims of a common policy not to compensate them for overtime hours worked.[7] "Considering Plaintiffs' minimal burden at this stage of the proceedings, the Court finds that this evidence is sufficient to establish a colorable basis for Plaintiffs' claims." Dominquez, 2007 WL 2422837, at *3 (citations omitted).

Valspar ardently contests Plaintiffs' position that they are similarly situated to one another and the class they seek to represent for a number of reasons. It argues that geographic diversity, different managers, and different (or differently-applied) policies undermine Plaintiffs' similarities. At the first stage, however, "Plaintiffs are not required to provide evidence showing [the employer]'s illegal practice at every location or that [they] are identically situated to putative class members in all respects." Burch, 500 F. Supp. 2d at 1187 (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001)). Despite the fact that Plaintiffs are from different territories, all assert that TMs had similar job duties and were classified as exempt (and thus not paid overtime), regardless of where their territories were located. This satisfies their burden.

Valspar also argues Plaintiffs are not similarly situated with respect to their

---

[7] Valspar proffers declarations from other TMs highlighting variations in their job duties, as well as excerpts from some Plaintiffs' depositions, which it argues are inconsistent with their Affidavits. (See generally, Tucker Fife Decl.) Yet the discrepancies Valspar identifies "are not so clear that the Court will disregard the [affidavits] at issue." Cruz, Civ. No. 08-5900, Doc. No. 101, at 26 (citing Sjoblom v. Charter Commc'ns, LLC, 571 F. Supp. 2d 961, 970 (W.D. Wisc. 2008)). Further, since credibility determinations are not made at the first stage, the Court will not decide whether other TMs' assertions are more credible than Plaintiffs'. See id.

9

misclassification claim due to their autonomy and differing job duties, because exemption status "depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria." Heartland Auto., 404 F. Supp. 2d at 1150.  It relies primarily on two cases in support of this argument—Heartland Automotive and Cruz v. Lawson Software, Inc.  However, both cases decided *decertification* motions, which are judged by a very different standard than the one applicable here.  In fact, the Court in each case had previously *granted* conditional certification and authorized judicial notice.  See Cruz, Civ. No. 08-5900, Doc. No. 101 (D. Minn. Mar. 3, 2009) (Davis, J.); Heartland Auto., Civ. No. 04-1403, Doc. No. 71 (D. Minn. Oct. 18, 2004) (Kyle, J.) (adopting Report and Recommendation of Boylan, M.J.).  In Cruz, the defendant made the very same argument Valspar makes here in opposition to conditional certification—that determining whether plaintiffs are misclassified as exempt is too fact-based and individualized an inquiry for class certification—but the Court flatly rejected it, noting "there is no general rule that classification cases are not suitable for conditional certification."  Cruz, Civ. No. 08-5900, Doc. No. 101, at 22.[8]

In addition to challenging Plaintiffs' similarly-situated status, Valspar argues the case cannot be efficiently managed as a collective action.  In determining whether a class may be properly managed as a collective action, the Court must look to factual

---

[8] Valspar also argues that Plaintiffs' reliance on Seymour v. PPG Industries, Inc., is inapt. Plaintiffs cite Seymour as an example of a similar case—involving a paint manufacturer and its TMs employed in Lowe's stores—in which conditional certification was granted.  (See Mem. in Supp. at 14 (citing Seymour v. PPG Indus., Inc., No. 09-1707 (W.D. Pa. Dec. 30, 2009).)  Valspar is correct that the conditional-certification decision in Seymour involved issues not present here (namely, whether certification was appropriate given an earlier-filed case involving employees of the same company); however, even if Seymour is distinguishable, this does not alter the above analysis or the Court's conclusion that conditional certification is appropriate.

similarities or differences among the proposed class members. E.g., West, 2006 WL 1892527, at *3. Here, the putative class spans the country and, by Plaintiffs' estimation, consists of at least 275 members. And although Plaintiffs worked in different regions across the country and under different managers, they all make the same allegations about the nature of their job responsibilities, the fact they regularly worked more than 40-hour weeks, their classification as exempt, and the policies they were required to follow in reporting their work hours. The salient factual allegations among the Plaintiffs are sufficiently similar for collective treatment at this stage.

## II. Authorization of Judicial Notice

Having determined that Plaintiffs have met their burden of showing that a class of similarly situated plaintiffs exists and this case is appropriate for conditional certification, the only remaining issue is the proposed notice. "Courts may facilitate the opt-in process by 'authorizing the named Plaintiffs . . . to transmit a notice [of the lawsuit] to potential class members.'" Dominquez, 2007 WL 2422837, at *2 (quoting West, 2006 WL 1892527, at *2); accord Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

The power to authorize notice is discretionary and should be exercised only in "appropriate cases"—that is, in cases where the plaintiffs have made a threshold showing that they meet the criteria in § 216(b). Dominquez, 2007 WL 2422837, at *2 (quoting West, 2006 WL 2892527, at *2). Because Plaintiffs have made such a showing, the Court will authorize notification. As for the form of the notification, the Court must ensure that notice is "timely, accurate, and informative." Sperling, 493 U.S. at 172. Plaintiffs have submitted a proposed notice, to which Valspar objects, arguing that it is

inappropriate and misleading for a variety of reasons.  Valspar proposes a different notice, similar to one authorized by this Court in <u>Lyons v. Ameriprise Financial, Inc.</u>, No. 10-cv-503 (Doc. No. 94).  Plaintiffs had ample opportunity to address Valspar's arguments about the form of the notice yet failed to do so in either their Reply Memorandum or at the hearing on their Motion.  The Court thus accepts and will authorize the notice proposed by Valspar.  (<u>See</u> Tucker Fife Decl. Ex. 36.)  That notice is sufficient without containing unnecessary and potentially misleading information, and it is consistent with notices authorized by this Court in the past.

Plaintiffs also propose a 90-day opt-in period in order to "protect the rights of [] opt-in plaintiffs," particularly those who are no longer employed by Valspar and may have relocated.  (Reply Mem. at 19.)  While they cite cases in which courts have authorized 90-day opt-in periods, this Court sees no need for such an extended period in this case—60 days is sufficient time to notify putative class members and allow them to decide whether to opt in without further delaying this litigation.

Finally, Valspar requests that it be ordered to produce putative class members' information to a third-party administrator rather than directly to Plaintiffs.  Yet employers routinely produce such information to plaintiffs for purposes of facilitating notice in collective actions like this one, and the Court perceives no reason why doing so here would pose an undue risk to privacy or confidentiality.[9]

---

[9] The Court notes, however, that salary information (which Plaintiffs here appear to seek) is irrelevant for purposes of facilitating notice, and Valspar will not be required to produce it.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. Plaintiff's Motion for Conditional Class Certification (Doc. No. 35) is **GRANTED.** The following class is conditionally certified:

    Any and all current or former Valspar employees who work or have worked as a Lowe's Team Territory Manager (formerly known as a "Field Sales Representative") within the United States at any time in the three years prior to the date of this Order;

2. The Notice attached to this Order is **AUTHORIZED** for transmittal to all putative members of the conditionally-certified class; and

3. Valspar **SHALL PRODUCE** to Plaintiffs, within ten days of the date of this Order, a list of the (a) names and (b) last-known addresses of all putative members of the class conditionally certified herein.


Dated: April 11, 2011                              s/Richard H. Kyle
                                                   RICHARD H. KYLE
                                                   United States District Judge