# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Shane Simmons, et al.,

               Plaintiffs,

v.

Valspar Corporation,

               Defendant.

Civ. No. 10-3026 (RHK/SER)
**MEMORANDUM OPINION
AND ORDER**

---

Christopher B. Hall, Patrick J. Hannon, P. Andrew Lampros, Cook Hall & Lampros, LLP, Atlanta, Georgia, Edward S. Cook, Edward S. Cook P.C., Atlanta, Georgia, William Kvas, Hunegs, LeNeave & Kvas, PA, Wayzata, Minnesota, for Plaintiffs.

Joan B. Tucker Fife, Emilie C. Woodhead, Gregory F. Jacob, Winston & Strawn LLP, San Francisco, California, Ryan E. Mick, Dorsey & Whitney LLP, Minneapolis, Minnesota, for Defendant.

---

# INTRODUCTION

Plaintiffs are current and former employees of Defendant Valspar Corporation ("Valspar"). In this action, they allege that Valspar failed to pay them for overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). The Court conditionally certified Plaintiffs' collective action under § 216(b) and permitted Plaintiffs to proceed jointly for the purpose of discovery. Now that discovery is complete, Valspar asserts that Plaintiffs' claims are not sufficiently similar and moves to decertify the collective action. For the reasons set forth below, the Court will deny Valspar's Motion.

## BACKGROUND

### I.     Plaintiffs' Jobs as Territory Managers

*Job Duties*

Valspar is a paint manufacturer that sells its products through Lowe's and other home-improvement retailers.  Plaintiffs were employed by Valspar as Lowe's Team Territory Managers ("TMs") from 2007 through 2012, to promote and oversee Valspar's products in Lowe's home-improvement stores.  Each TM is responsible for an assigned territory, which encompasses an average of six Lowe's stores.  A TM's job duties are split into seven general categories:

1.   In-store "sales," which includes attending to Lowe's customers, answering their questions, helping them select paint products, and mixing paints for them;

2.   Maintaining the appearance of Valspar products in the stores, which includes cleaning and fixing displays and stock, replenishing brochures and color samples, and moving product to the easy-to-reach shelves;

3.   Training and educating Lowe's associates on Valspar's products and selling techniques, both formally and informally;

4.   Analyzing Lowe's paint sales and inventory data using the Business Intelligence system ("BI");

5.   "Sets, resets, and remerchandises" in stores, which includes setting up new stores and setting up or restocking displays;

6.   Outside "sales," which includes calling on contractors to promote their use of Valspar's products and Lowe's stores' services; and

7.   Miscellaneous tasks such as preparing schedules, responding to surveys or

emails, telephone calls and meetings with supervisors, etc.

TMs are expected to execute these tasks for each of their assigned store locations.

*Supervision*

TMs are each supervised by a Regional Manager ("RM"), with whom they

communicate at least weekly.  RMs evaluate the TMs' job performance, in part, by

performing a quarterly walk-through of Lowe's stores.  On these walk-throughs, the RMs

use a standardized checklist that focuses almost entirely on store appearance (i.e. how

well the TM has maintained Valspar's products and displays within the Lowe's paint

department).

*Hours Worked*

The average number of weekly hours each Plaintiff reported working varied, but

all Plaintiffs reported working more than forty hours per week.  They testified that they

were expected to be in Lowe's stores Monday through Friday, and some Saturdays, for at

least eight hours each day, and that they were expected to visit each of their stores at least

once a week.  The amount of time each Plaintiff devoted to a given task varied—not only

from Plaintiff to Plaintiff, but also from day to day, week to week, and store to store.

Nonetheless, all Plaintiffs reported spending a majority of their time on "in-store selling"

and "store appearance."  (See Fife Ex. 7; Pls.' Ex. 46.)

TMs generally were not required to keep track of their time because they were not

paid on an hourly basis.  But a few sources provide hard data on the amount of time they

spent working and on which tasks.  First, they were expected to log in and out of the

Lowe's time-keeping system ("LSM") upon arriving and departing each Lowe's store. They were also expected to keep track of their contact with contractors, although not necessarily the time spent with contractors.  TMs also reported the amount of time they spent on each of the seven categories of job duties through Valspar's "time-and-action" surveys.  While this data is helpful to evaluating how Plaintiffs spent their time and how much time they spent working, the parties agree that it does not accurately reflect their schedules—it does not include time they worked at home, their commutes between stores, or time spent on "outside sales," and it may include time that they were not working because Plaintiffs occasionally did not log out of LSM before leaving a Lowe's store.  Overall, Plaintiffs estimate they worked fifty to sixty-five hours a week.

*Compensation*

Because Valspar classified TMs as exempt from the FLSA as either outside salespeople or administrative employees, it did not pay them on an hourly basis or for overtime.  Instead, TMs were paid an annual salary plus a commission based on Valspar's sales at the Lowe's stores in the TM's territory, and, on designated days, TMs were also eligible to earn an additional amount or "spiff" for each can of Valspar paint sold.

## II.    The Instant Action

Plaintiffs Shane Simmons and Chris Cook commenced this action in July 2010, alleging that Valspar had misclassified TMs as exempt employees and thus failed to compensate them for overtime; the Complaint was amended to join ten more named Plaintiffs.  The Court has conditionally certified a collective action and, after more opted

into the suit, there are now sixty-eight Plaintiffs, each of whom is a current or former

Valspar TM.[1]  Now that discovery is complete, Valspar moves to decertify the collective

action, asserting that the facts uncovered show Plaintiffs are not similarly situated and

their claims must be adjudicated individually.  For the reasons set forth below, the Court

will deny Valspar's Motion and allow this matter to proceed as a collective action.

## STANDARD OF DECISION

**I.     FLSA Overtime-Pay Exemptions**

Section 207(a) of the FLSA requires an employee to be paid at least 50% more

than his regular rate for each hour worked in excess of forty hours within a workweek.

This mandate applies to all employees not specifically exempted under the Act.

§ 213(a)(1).  The primary question to be resolved in this action is whether Plaintiffs were

exempt employees.  While the Court does not evaluate the merits of Plaintiffs' claims on

a decertification motion, understanding their claims (and Valspar's defenses) is essential

to deciding whether Plaintiffs are similarly situated *in relevant respects* and allowed to

proceed as a collective.

Valspar contends that each Plaintiff was exempt under the Act as either an

"outside salesman" or an "administrative" employee, or a combination of the two.  An

employee qualifies for the outside-sales exemption if his primary duty is "making sales"

and he is "customarily and regularly engaged away from the employer's place or places

of business in performing such duty."  29 C.F.R. § 541.500(a).  An employee qualifies

---

[1] With the exception of a single Plaintiff who opted in as the executrix for a deceased
TM's estate.

- 5 -

for the administrative exemption if his primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and he exercises "discretion and independent judgment with respect to matters of significance." § 541.200(a).  Alternatively, "[a]n employee whose primary duty is neither sales nor administration may nonetheless qualify as exempt based upon the combination of his sales and administrative duties." § 541.708.

To determine whether an employee is exempt, a court considers "(1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." § 541.700(a).  The Court bears in mind this exemption framework as it determines whether Plaintiffs' claims may be adjudicated collectively.

## II.   FLSA Collective Actions

Under the FLSA, an action to collect unpaid overtime wages "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated*." § 216(b) (emphasis added).  Unlike a Rule 23 class action, no employee is a party to an FLSA collective action unless that employee "opts in"—that is, gives written consent to become a party. Id.  In order to be certified as a collective action, plaintiffs must demonstrate that the putative collective members are "similarly situated."  "While the FLSA does not define the term 'similarly situated,' courts have held that plaintiffs 'need show only that their positions are *similar*,

not *identical* to the positions held by the putative [collective] members.'" <u>Smith v. Heartland Automotive Servs., Inc.</u>, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.) (quoting <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1096 (11th Cir. 1996)) (emphases added).  Whether to certify a collective action is within the Court's discretion.  <u>Id.</u>

Although the Eighth Circuit has not spoken on the matter, the judges in this district have employed a two-step process to determine whether plaintiffs are similarly situated.  First, the Court determines whether the collective should be conditionally certified for the purpose of notifying other potential members and conducting discovery.  At this stage, plaintiffs are required to establish only a colorable basis for their claim that a collective of similarly situated plaintiffs exists.  <u>Id.</u>  On April 11, 2011, the Court determined that Plaintiffs met this burden and conditionally certified the instant collective.  <u>See</u> <u>Simmons v. Valspar Corp.</u>, Civ. No. 10-3026, 2011 WL 1363988 (D. Minn. Apr. 11, 2011) (Kyle, J.).

Now that discovery is complete and Valspar moves to decertify the collective, the Court must proceed to the second step.  At this step, the Court reviews several factors to determine whether plaintiffs have established they are similarly situated, including (1) "the extent and consequences of disparate factual and employment settings of the individual plaintiffs," including whether plaintiffs were affected by a common decision, plan, or policy; (2) "the various defenses available to the defendant which appear to be individual to each plaintiff;" and (3) other "fairness and procedural considerations." <u>Nerland v. Caribou Coffee Co.</u>, 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007) (Schiltz, J.).

## ANALYSIS

### I.   Plaintiffs' Employment Settings

The first factor the Court considers is the disparate factual and employment settings of the individual Plaintiffs.  The Court concludes this factor weighs in favor of a collective action.  Plaintiffs have shown that they were affected by a common Valspar policy—namely, that Valspar considered Plaintiffs' duties as TMs in 2005 and classified all TMs as FLSA-exempt employees.  Plaintiffs have also shown that they are similarly situated with respect to their primary job duties such that their status as exempt or non-exempt employees may be determined collectively, rather than individually.

Plaintiffs have presented evidence that they had the same detailed job description, followed the same standards of conduct from Valspar and Lowe's, received the same training, were under the same supervisory structure, were evaluated using the same checklist, were paid according to the same compensation plan, and executed the same seven categories of duties.  All Plaintiffs had the same amount of discretion in executing "sales"—they did not set pricing, order product inventory, or check out customers.  Furthermore, Plaintiffs' affidavits, responses to interrogatories, and deposition testimony all reflect a similar understanding of the job's duties and similar patterns in their day-to-day activities.  All Plaintiffs reported spending the vast majority of their working hours in Lowe's stores.  All Plaintiffs reported that they spent most of their time in the stores maintaining the appearance of Valspar's merchandise and assisting customers.  No Plaintiff reported spending more than a third of his time on "outside sales."

Valspar attempts to depict Plaintiffs' testimony about their job performance as wildly dissimilar by quoting, for example, that one Plaintiff reported spending 0% of his time on sales and another Plaintiff 100% of his time. But such examples are misleading—no Plaintiff consistently spent 0% or 100% of his time on sales. Rather, the data on how much time each Plaintiff spent on each task varied from day to day and week to week more than it did from Plaintiff to Plaintiff. Thus, one individual Plaintiff may have reported spending no time on sales one day and the entire day on sales another. The exemption analysis requires the Court to consider the relative importance of, and time spent performing, each duty *within the context of the Plaintiff's job generally*, not on any specific day.

Valspar also emphasizes that Plaintiffs' testimony is inconsistent because some report making "sales" and some do not. But these differences are semantic. Plaintiffs testified to performing the same underlying duties, regardless of whether those duties are characterized as "sales." It is undisputed that Plaintiffs could not set prices, ring up customers, or purchase, order, or take orders for inventory. It is what Plaintiffs do—not what they call it—that matters when deciding if they are exempt employees. In fact, whether some or any of Plaintiffs' duties are considered "sales" within the meaning of FLSA is precisely what is at issue in this case.

The evidence demonstrates far more commonalities present among Plaintiffs here than were present among employees in the cases Valspar relies on. See e.g., Smith, 404 F. Supp. 2d at 1152 (finding "significant . . . discrepancies between and among [plaintiffs] with respect to a Store manager's ability to exercise discretion, perform

management tasks, and act independently of the district manager," all of which were

material to the executive-exemption determination).  The Court concludes this case is

most comparable to Nerland, in which the plaintiffs worked as managers in nearly-

identical chain stores, wore the same uniforms, were subject to the same policies and

practices, and had "substantially the same job duties and responsibilities."  564 F. Supp.

2d at 1018.  If Plaintiffs' claims require individualized damage calculations as Defendant

avers (but Plaintiffs dispute), the Court believes collective adjudication is feasible

nonetheless.  See id.

## II.    Valspar's Defenses

The second factor to consider is the various defenses that are individual to each

plaintiff.  Valspar's primary defense is that Plaintiffs are exempt employees.  However,

as discussed in the preceding section, the Court concludes that Plaintiffs' employment

settings were sufficiently similar that it may determine their exemption status

collectively.  Valspar also asserts that it intends to attack Plaintiffs' credibility by

questioning individual Plaintiffs about discrepancies between deposition testimony,

declarations, and interrogatory answers.  The Court recognizes that "[s]uch individual

questioning would likely make it difficult and confusing for the fact finder," Aquilino v.

Home Depot, U.S.A., Inc., Civ. Action No. 04-04100, 2011 WL 564039, at *9 (D.N.J.

Feb. 15, 2011), but this defense alone is not sufficient to make collective action

unmanageable.  As Plaintiffs' exemption status is capable of common disposition but

credibility is necessarily individual, the Court concludes that this factor weighs evenly for

both sides.

## III.      Procedural and Fairness Considerations

The third factor in the analysis is procedural and fairness considerations.  "[T]he district court must balance [the first two] factors with the fundamental purpose of 29 U.S.C. § 216(b): (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."  Kautsch v. Premier Commc'ns., No. 06-cv-04035-NKL, 2008 WL 294271, at *2 (W.D. Mo. Jan. 31, 2008) (internal quotations omitted).  A collective action allows plaintiffs "the advantage of lower individual costs by the pooling of resources" and benefits the judicial system "through the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged violative activity."  Brennan v. Qwest Commc'ns Int'l, Inc., Civ. No. 07-2024, 2009 WL 1586721, at *6 (D. Minn. June 4, 2009) (Montgomery, J.).

Plaintiffs assert that their individual damages are sufficiently modest to make litigating each claim individually impractical; accordingly, the remedial purpose of the FLSA would best be served by allowing Plaintiffs to proceed collectively.  See Nerland, 564 F. Supp. 2d at 1025 (the FLSA is remedial in nature and should therefore "'be given a broad reading, in favor of coverage'") (quoting Kelley v. Alamo, 964 F.2d 747, 749–50 (8th Cir. 1992)).  In addition, allowing Plaintiffs to proceed collectively would conserve judicial resources by allowing the Court to make a single determination as to Plaintiffs' exempt status and potential damages, rather than requiring over fifty individual determinations of essentially the same legal issue.  In sum, the Court concludes that

procedural and fairness considerations weigh in favor of permitting Plaintiffs to proceed with this collective action.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Valspar's Motion for Decertification of Collective Action (Doc. No. 164) is **DENIED**.

Dated:  May 16, 2013

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge